UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONNA L. SMITH,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:12-cv-05814-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 22, 2013 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 9, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of April 1, 2002, due to degenerative disc disease, bladder disease, anxiety, and fibromyalgia. See ECF #12, Administrative Record ("AR") 23, 208. That application was

REPORT AND RECOMMENDATION - 1

denied upon initial administrative review on August 28, 2006, and on reconsideration on December 6, 2006. See AR 23. A hearing was held before an administrative law judge ("ALJ") on October 23, 2008, at which plaintiff, represented by counsel, appeared and testified. See AR 52-86. At that hearing, plaintiff amended her alleged onset date of disability to November 1, 2004. See AR 61. In a decision dated February 6, 2009, the ALJ determined plaintiff to be not disabled. See AR 92-103.

On October 21, 2009, the Appeals Council granted plaintiff's request for review of the ALJ's decision, and remanded the matter for further administrative proceedings. See AR 104-06. Another hearing was held before the same ALJ on September 29, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See AR 880-908. In a second decision dated October 28, 2010, the ALJ again determined plaintiff to be not disabled. See AR 23-44. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984. The ALJ's decision therefore became the final decision of the Commissioner of Social Security (the "Commissioner") after sixty days. Id. On September 11, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on February 5, 2013. See ECF #12.

The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court. Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to properly evaluate the opinions of Paul Michels, M.D., and Carla van Dam, Ph.D.; and (2) in not including in plaintiff's residual functional capacity assessment any limitations stemming from her interstitial cystitis and urinary

REPORT AND RECOMMENDATION - 2

frequency. For the reasons set forth below, the undersigned agrees the ALJ did not properly evaluate the opinions of Drs. Michels and van Dam, and therefore erred in determining plaintiff to be not disabled on that basis. Also for the reasons set forth below, however the undersigned recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

REPORT AND RECOMMENDATION - 3

sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.  The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

  A. Dr. Michels

In terms of the medical evidence in the record, plaintiff challenges the ALJ's following

REPORT AND RECOMMENDATION - 5

findings:

> I give significant weight to the medical opinion of psychiatrist Paul Michels, M.D., because he examined the claimant and based his conclusions on objective findings.  He concluded that the claimant had a depressive disorder not otherwise specified and possible cluster B character traits.  While he found fair concentration and focus and felt the claimant's pace and persistence might be low and that she might have occasional to frequent difficulty in completing tasks in [a] timely manner, he indicate [sic] she could probably understand, follow, and remember complex instructions; her interaction with others may be somewhat difficult; and she can probably manage her finances (Ex. 9F).  I note that the activities discussed above indicate that Dr. Michels' assessment may be generous in claimant's favor.

AR 37.  Plaintiff argues, and the undersigned agrees, that although the ALJ stated he was giving significant weight to the opinion of Dr. Michels, the ALJ failed to fully account for all of the mental functional limitations set forth in that opinion in the residual functional capacity ("RFC") he assessed or to adequately explain why he did not do so.

The ALJ found plaintiff had the mental RFC to "**perform routine tasks and some slightly more complex tasks involving 4-5 steps**," "**tolerate superficial and not frequent contact with the general public**," and "**perform work with standardized work requirements that do not have much variation in expectation**." AR 30 (emphasis in original).  The undersigned agrees with defendant that the limitation to performing routine tasks and some slightly more complex ones adequately encompasses the assessment by Dr. Michels that plaintiff had "fair" focus and concentration, as there is no indication that the two findings are inconsistent with each other.  The undersigned also agrees with defendant that the ALJ was not required to adopt the opinion of Dr. Michels that plaintiff's pace and persistence *might* be low due to the highly speculative nature of that opinion.

The undersigned does find, however, that the ALJ's RFC assessment did not adequately account for the limitation to occasional to frequent difficulty completing specific tasks in a

REPORT AND RECOMMENDATION - 6

timely or consistent manner found by Dr. Michels.  This is because the limitations to performing routine and some complex tasks and to performing work with standardized requirements that do not have much variation in expectation, do not necessarily say anything about an individual's ability to persist with specific tasks or perform them consistently.  In addition, while the public contact limitation does not conflict with the opinion of Dr. Michels that plaintiff's "[i]nteractions with others may be somewhat difficult" (AR 373-74), that opinion indicates as well that plaintiff also may have problems interacting with both co-workers and supervisors, which the ALJ did not address in his assessment of plaintiff's residual functional capacity.

        B.        Dr. van Dam

The record contains a mental residual functional capacity assessment form ("MRFCA"), which was completed by Dr. van Dam on August 25, 2006, and affirmed by Bruce Eather, Ph.D., on December 5, 2006.  See AR 390-92, 466.  In Section I of the MRFCA form, Dr. van Dam checked boxes indicating plaintiff was moderately limited in a number of mental functional areas.  See AR 390-91.  In Section III of that form, Dr. van Dam further opined in relevant part:

> . . . She can do routine simple tasks and most slightly more complex tasks. Attention, concentration, pace and persistence would all be moderately impaired at times secondary to perceptions.
>
> . . . She would do best with less public contact and cooperative and supportive supervision.
>
> . . . She would benefit from work requirements where she knew what was expected of her to help her adjust to and manage the requirements and schedule.

AR 392.

In his decision, the ALJ stated he had given "substantial weight" to the opinion of Dr. van Dam.  See AR 37 (citing Exhibit 12F (see AR 390-92)).  But the undersigned agrees with plaintiff that as with the opinion of Dr. Michels, the ALJ's RFC assessment does not adequately account

REPORT AND RECOMMENDATION - 7

for all of the mental functional limitations Dr. Lewis set forth in Section III of the MRFCA form she completed.[2]  For example, Dr. van Dam found plaintiff's pace and persistence to be moderately limited, which as discussed above is not adequately covered by a limitation to performing routine and some slightly more complex tasks.  Nor does the limitation on public contact address the opinion of Dr. Lewis that plaintiff would do best with cooperative and supportive supervision.  Although defendant is correct that the latter limitation does not prohibit plaintiff from having contact with supervisors, it clearly suggests at least some limitation in regard thereto.  The ALJ's failure to take that into account was error.[3]

II.     The ALJ's Assessment of Plaintiff's RFC

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.  See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's

---

[2] Plaintiff argues the ALJ also erred in failing to account for all of the mental functional limitations checked by Dr. van Dam in Section I of that form.  Pursuant to the directive contained in the Commissioner's Program Operations Manual System ("POMS"), however, **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of RFC**." POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original).  While is true that the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).  Nor does the undersigned find or plaintiff point out any valid reasons for not following that directive in this case.  Accordingly, the ALJ was under no obligation to specifically adopt any of the Section I checked limitations.  Nor does the undersigned find any error in the ALJ's failure to mention all of the findings made by Dr. Michels as it is clear she considered his opinion (see AR 388), and there is no requirement that she discuss it in detail.

[3] On the other hand, the undersigned finds the ALJ's restriction to standardized work requirements that do not have much variation in expectation does adequately account for the opinion of Dr. Lewis that plaintiff would benefit from work requirements where she knew what was expected of her.

REPORT AND RECOMMENDATION - 8

residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ found plaintiff had the mental RFC to "**perform routine tasks and some slightly more complex tasks involving 4-5 steps**," to "**tolerate superficial and not frequent contact with the general public**," and to "**perform work with standardized work requirements that do not have much variation in expectation**." AR 30 (emphasis in original). Also as discussed above, however, the ALJ erred in evaluating the opinions of Dr. Michels and Dr. van Dam with regard to the mental functional limitations they assessed. The undersigned thus agrees with plaintiff that the ALJ's mental RFC assessment cannot be said to be supported by substantial evidence, as it is far from clear that it accurately describes all of plaintiff's functional limitations.

III.   The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national

REPORT AND RECOMMENDATION - 9

economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 903. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 903-04. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 42-43. Again, however, the undersigned agrees with plaintiff that in light of the ALJ's errors in evaluating the medical opinion evidence from Dr. Michels and Dr. van Dam, and thus in assessing plaintiff's RFC, the ALJ's hypothetical question also cannot be said to be completely accurate, and therefore the ALJ erred in relying on

REPORT AND RECOMMENDATION - 10

it to find plaintiff not disabled at step five.[4]

IV.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional limitations, and therefore in regard to plaintiff's mental RFC and her ability to

---

[4] Plaintiff further argues she should be found disabled because the vocational expert testified that an individual who had a moderate limitation – defined by plaintiff's attorney as consisting of a loss of 10% to 20% efficacy – in attention, concentration, pace, and persistence, would not be able to perform the jobs the vocational expert identified. See ECF #16, pp. 6, 8 (citing AR 906-07). Plaintiff, however, points to no evidence in the record that either Dr. Michels or Dr. van Dam adopted this definition of moderate limitation in their opinions, or that such a definition is in fact supported by substantial evidence.  Accordingly, plaintiff has failed to show she should have been found disabled on this basis.

REPORT AND RECOMMENDATION - 11

perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings in this case is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the Commissioner's final decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 22, 2013**, as noted in the caption.

DATED this 5th day of November, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12